IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VILLAS OF SOUTHWIND TOWNHOME ASSOCIATION V. JOHNSTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

VILLAS OF SOUTHWIND TOWNHOME ASSOCIATION, A NEBRASKA
NOT FOR PROFIT CORPORATION, APPELLEE,

V.

BERYLE LEE JOHNSTON, APPELLANT.

Filed January 17, 2023.    No. A-21-1028.

Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Affirmed.

C.G. "Dooley" Jolly, of Adams & Sullivan, P.C., L.L.O., for appellant.

Zachary W. Lutz-Priefert, of Gross, Welch, Marks & Clare, P.C., L.L.O., for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Beryle Lee Johnston constructed an enclosure around his patio and installed a temporary wrought iron fence in the backyard of his townhome in Sarpy County, Nebraska. The Villas of Southwind Townhome Association (the Association) filed suit against Johnston, alleging that Johnston's "fence" violated the restrictive covenants applicable to the premises because new fencing was not permitted in the subdivision and because Johnston did not seek approval from the Association prior to installation. The Association asked that Johnston be ordered to "immediately remove the exterior fencing from his Property and to cease and desist from installing any exterior changes . . . without first obtaining the approval of [the Association]." The district court ultimately granted a motion for summary judgment filed by the Association, finding that Johnston "breached the covenants by constructing a fence which is not permitted." The court ordered Johnston to

- 1 -

remove the "offending fence" within 30 days from the date of the order. Johnston appeals here. We affirm.

BACKGROUND

In 2014, Johnston purchased a townhome in the Villas of Southwind subdivision. Prior to Johnston's purchase of the property, the Association filed an "Amended Declaration of Covenants, Conditions, Restrictions, and Easements" (the Amended Declaration) for the subdivision with the Sarpy County register of deeds. Included in the Amended Declaration is a requirement that homeowners obtain preapproval for any exterior improvements built on their lots. That provision provides, in relevant part:

> No residence, building, fence (other than fences constructed by the [Association]), wall, driveway, patio, patio enclosure, swimming pool, pool house, basketball backboards, dog house, tree house, antenna, satellite receiving station, dishes or "discs", flag pole, solar heating or cooling device, tool shed, outdoor lighting, wind mill or other external improvement, above or below the ground . . . shall be constructed, erected, placed or permitted to remain on any Lot, nor shall any grading or excavation for any Improvement be commenced, except for Improvements which have been approved by [the Association] as follows:
>
> A. An owner desiring to erect an Improvement shall deliver two sets of construction plans, landscaping plan and plot plans to [the Association]. . . . Such plans shall include a description type, quality, color and use of materials proposed for the exterior of such Improvement.
>
> B. [The Association] shall review such plans in relation to the type and exterior of improvements constructed, or approved for construction, on neighboring Lots and in the surrounding area, and any general scheme or plans formulated by [the Association]. In this regard, [the Association] intends that the Lots shall constitute when developed a residential community with homes constructed of high quality materials. The decision to approve or refuse approval of a proposed Improvement shall be exercised by [the Association] to promote development of the Lots and to protect the values, character and residential quality of all Lots. If [the Association] determines that the harmony of external design and location in relation to the surrounding Improvements and topography of the proposed Improvement will not protect and enhance the integrity and character of all the Lots and neighboring Lots as a quality residential community, [the Association] may refuse approval of the proposed Improvement.

Elsewhere in the Amended Declaration, there is a specific provision prohibiting new fences: "No new fence shall be permitted."

In August 2020, Johnston wished to erect two structures on his property. The first structure is referred to by Johnston as a patio enclosure. Photographs of the completed patio enclosure depict a 5-foot-tall gray wooden structure with diagonal slats which surrounds the entirety of Johnston's raised cement patio. The second structure is referred to by Johnston as a "pet pen" or a wrought iron fence. This fence is, according to Johnston, temporary and easily removable.

In order to comply with the Amended Declaration when building the patio enclosure and the wrought iron fence, Johnston telephoned the property manager for the subdivision on August 5, 2020. Johnston indicated to the property manager his desire to meet with the Board members for the Association "to submit plans and specs for a patio enclosure [he] was wanting to erect." Johnston was informed that he could not immediately meet with the Board because future Board meetings had been indefinitely postponed due to the ongoing COVID-19 pandemic. Johnston telephoned the property manager again on August 12, and a third time on August 19. He was not able to speak with anyone about obtaining approval for the structures during either telephone call.

In late August 2020, Johnston began work on the patio enclosure. The work continued throughout September. On September 29, Johnston again telephoned the property manager for the subdivision to inform him that he had started work on the project and that he wished to present his plans to members of the Association's Board. Johnston was, at that time, informed that the property manager was no longer associated with the subdivision. Later, in October 2020, Johnston learned that a new property manager, Jason Young, had been hired for the subdivision. He did not contact Young, however, until March 2021, after the patio enclosure was complete and the wrought iron fence had been placed. During the March 2021 telephone call, Johnston asked Young for assistance on a matter unrelated to the patio enclosure or the wrought iron fence. Young informed Johnston that he needed to remove his "fence" because he never requested permission to install the fence from the Board.

In response to Young's warning that the fence needed to be removed from Johnston's property, Johnston sent to the Board "the plans and specs for [the] patio enclosure." The Board did not approve the plans. Young sent Johnston a "Notice" dated March 31, 2021, which states in part:

> 1. An Architectural Change Request was submitted for 8152 South 94th Circle by the homeowner, Beryle Johnston, for review by the board on 29 March 2021.
> 2. The board reviewed on 30 March 2021; Decision to deny the request at this time.
> 3. It was discovered unrequested/approved (sic) work was done to Mr. Johnston's patio.
> A) Additionally, the fence element of the patio is not authorized within the current governing documents
> 4. The board requests that the project be removed at the homeowner's expense.

On April 4, 2021, the Association filed a complaint against Johnston in the Sarpy County District Court. In the complaint, the Association alleged that "Johnston erected a fence without approval and, thus . . . was in violation of the [Amended Declaration]." The Association also alleged that, pursuant to the Amended Declaration, no new fence was permitted to be built on Johnston's property. The Association requested that the district court "issue a permanent mandatory injunction directing [Johnston] to immediately remove the exterior fencing from his Property and to cease and desist from installing any exterior changes which are not otherwise permitted by the [Amended Declaration] without first obtaining the approval of [the Association]."

In Johnston's answer to the complaint, he admitted that he did not obtain the permission of the Association prior to building the fence. However, Johnston alleged that the Association's acts or omissions made it impossible to obtain such permission. He further alleged that the Association's complaint failed to state a cause of action upon which relief may be granted, that the

relief sought by the Association is barred by the doctrine of laches and estoppel, and that the Association has waived any right to raise Johnston's alleged violations of the Amended Declaration.

The Association filed a motion for summary judgment, arguing that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. A hearing was held on the Association's motion in August 2021. At this hearing, both the Association and Johnston presented evidence in conformity with the facts recited above.

On December 2, 2021, the district court entered an order granting the Association's motion for summary judgment. In the motion, the district court found:

> [T]here is no material dispute as to what constitutes a fence or enclosure nor the fact that fences and enclosures are prohibited per the covenants of the [Association]. Further, there is no evidence of a permit being obtained or acquiescence by the board. [Johnston], in his own statement of undisputed facts, even refers to the area in question as being "fenced in". Such fence or enclosure is prohibited per the covenants. While [Johnston] claims ambiguity as to the term 'fence', such a claim is not credible. [The exhibits attached to Johnston's affidavit] clearly show[] a fenced/enclosed back patio and yard. Ultimately, the Court finds that no material facts are disputed. [Johnston] admits he erected a structure on his property, i.e., "fenced in", he admits that he received no permission to do so, and he acknowledges that the covenants in their plain and ordinary meaning forbid such construction of a fence or other structure.

Given the district court's findings, it concluded that summary judgment must be entered for the Association in the form of a declaratory judgment and injunctive relief. The court ordered Johnston to remove "the offending fence" from his property within 30 days.

Johnston appeals from the district court's order here.

ASSIGNMENTS OF ERROR

On appeal, Johnston generally assigns and argues that the district court erred in finding that no genuine issues of material fact existed, and that the Association was entitled as a matter of law to injunctive relief requiring him to remove the fencing he installed.

STANDARD OF REVIEW

An appellate court will affirm a lower court's granting of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012); *Curtis Acres Assn. v. Hosman*, 22 Neb. App. 652, 859 N.W.2d 365 (2015). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

- 4 -

ANALYSIS

This case involves two structures that Johnston constructed in the backyard of his home which is located within the Southwind Villas subdivision, the patio enclosure and the wrought iron fence. In our review of Johnston's assertion that the district court erred in granting summary judgment and in ordering him to remove the fencing he installed, we must first determine whether the district court's order required Johnston to remove both the patio enclosure and the wrought iron fence or whether it required him to only remove one of the structures. Upon our careful reading of the court's order and the parties' pleadings, we conclude that the district court's order required Johnston to remove both the patio enclosure and the wrought iron fence. In reaching this conclusion, we note that in its complaint, the Association specifically asked the district court to require Johnston to "remove the exterior fencing from his property and to cease and desist from installing any exterior changes which are not otherwise permitted by the Covenants without first obtaining the approval of [the Association]." In its order, the district court grants the Association's specific request for declaratory and injunctive relief. The court refers to "[s]uch fence or enclosure" being prohibited by the covenants and that the exhibits showed the "fenced/enclosed back patio and yard;" the court then orders Johnston to remove "the offending fence." At oral argument before this court, neither party appeared to dispute that the court's order referred to both structures. As such, we construe the court's order as requiring Johnston to remove all exterior fencing (enclosed back patio and yard) within his backyard. We now turn to address the propriety of the district court's order as to each structure and the law overlaying such analysis.

Restrictive covenants are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants. *Southwind Homeowners Assn. v. Burden*, 283 Neb. 522, 810 N.W.2d 714 (2012). If the language is unambiguous, the covenant shall be enforced according to its plain language, and the covenant shall not be subject to rules of interpretation or construction. However, restrictive covenants are not favored in the law and, if ambiguous, should be construed in a manner which allows the maximum unrestricted use of the property. *Id*.

The Nebraska Supreme Court has previously addressed the specificity required by covenants which control residents' requests to build new construction or to make improvements on their property in *Normandy Square Assn. v. Ells*, 213 Neb. 60, 327 N.W.2d 101 (1982). In that case, a homeowner's association filed suit against a resident after the resident built a fence on her property without receiving the approval of the association. The association had apparently denied the resident's submitted building plans because the fence was not appropriately set back from the street. *Id*. The relevant covenants at issue included a requirement that residents obtain approval of any construction projects, but did not include any specific standards upon which that approval would be based. *Id*. Instead, the covenants included the following broad standard for the association's approval of building plans: "'[T]he harmony of external design and location in relation to the surrounding structures and topography. . . .'" *Id*. at 63, 327 N.W.2d at 104. In addition, the covenants indicated that their purpose was "'enhancing and protecting the value, desirability and attractiveness of said property. . . .'" *Id*. Ultimately, the trial court required the homeowner to relocate the fence so as to comply with the policy of the association.

On appeal, the Supreme Court affirmed the decision of the trial court. *Normandy Square Assn. v. Ells, supra*. The court held that restrictive covenants that permit a homeowners association

to approve or disapprove improvements based on a standard of whether such improvements conform to the harmony of external design and location in relation to surrounding structures are not per se ambiguous; rather, such covenants are enforceable, provided that the authority is exercised reasonably within the framework of the covenants' stated purposes. *Id*.

The facts of this case are somewhat different than the facts in *Normandy Square Assn. v. Ells, supra*. In that case, the homeowner submitted a proposed building plan prior to erecting the fence in question pursuant to the covenants, but the building plans were denied by the homeowners association. The homeowner erected the fence despite not receiving approval. Here, Johnston admits that he did not submit building plans for either the patio enclosure or the wrought iron fence to the Association prior to completing the construction of these structures. As such, the question at issue in this case is not whether the Association reasonably exercised its authority in denying a building request, but whether the covenants contained within the Amended Declaration required Johnston to receive preapproval from the Association prior to commencing constructing on the structures.

*Wrought Iron Fence.*

We first discuss the wrought iron fence which surrounds a large portion of Johnston's back yard. The evidence presented at the summary judgment hearing indicated that the wrought iron fence is not necessarily a permanent structure, but rather is considered by Johnston as temporary and easily removable fencing which is used to keep his dog confined to the back yard. Article I, section 11 of the Amended Declaration explicitly and specifically prohibits any new fence. Such section does not differentiate between temporary and permanent fencing, nor does it permit fencing for specific uses, such as confining a pet. Rather, the section precludes the construction or installation of any new fence. Given this language and given that it is clear that Johnston installed the wrought iron fence after the Amended Declaration was enacted in 2013, it is clear that Johnston's fence is prohibited by article I, section 11 of the Amended Declaration.

We note that there is some inconsistency within the Amended Declaration regarding the installation of new fences. While article I, section 11 prohibits any new fence, article I, section 2, prohibits the construction of new fences without prior approval from the Association. With regard to the wrought iron fence in Johnston's back yard, this inconsistency in the Amended Declaration is inconsequential. Johnston never sought approval for the wrought iron fence either prior to or after installing it in his backyard. As such, the fence is prohibited pursuant to either section of the Amended Declaration.

We conclude that pursuant to the language of the Amended Declaration, the district court did not err in granting the Association's motion for summary judgment as to the wrought iron fence and requiring such fence to be removed.

*Patio Enclosure.*

In the district court's order, it found that the patio enclosure constructed by Johnston was a fence and that, as a result, it was prohibited by the Amended Declaration. We do not disagree with the district court's finding that the patio enclosure constituted a fence. However, even if we were to conclude that the patio enclosure was not a fence, we would still be compelled to find that

it was not permitted by the Amended Declaration because Johnston failed to obtain prior approval from the Association for the construction.

Article I, section 2 of the Amended Declaration specifically prohibits homeowners in the Southwind Villas subdivision from constructing a patio enclosure without obtaining prior approval from the Association. In order to obtain such approval, the homeowner must submit to the Association two sets of building plans. The Association will then review such plans "in relation to the type and exterior of improvements constructed, or approved for construction, on neighboring Lots and in the surrounding area, and any general scheme or plans formulated by [the Association]."

Evidence presented at the summary judgment hearing revealed that Johnston attempted to contact the Association prior to constructing the patio enclosure. Johnston explained in his affidavit that the purpose of the contact was to seek permission to erect the patio enclosure. However, upon speaking to the person who was the property manager of the subdivision at that time, Johnston was not successful in setting up a time to meet with the Association. He admits that because he was not able to contact the Association, he did not submit any building plans, nor did he specifically request permission to build the patio enclosure.

Despite his failure to obtain permission for the structure, Johnston began and completed construction on the patio enclosure, knowing that the Amended Declaration required him to obtain preapproval for such construction. Only after construction was completed and after the Association asked him to remove the patio enclosure, did Johnston follow the directive of article I, section 2 of the Amended Declaration by submitting his building plans to the Association for review.

On appeal, Johnston claims that the Association unreasonably withheld its approval of the patio enclosure after he submitted the building plans. However, the Amended Declaration very clearly states that homeowners must obtain approval for the construction of a patio enclosure prior to commencing construction. Johnston did not do so and, as a result, the patio enclosure is not in compliance with article I, section 2 of the Amended Declaration.

Additionally, in its rejection of Johnston's plans, the Association's letter stated that "the fence element of the patio is not authorized within the current governing documents," which is ambiguous in that it may be suggesting the patio enclosure violated the no fence rule or it may be suggesting the structure simply was not in "harmony" with the rest of the neighboring lots as required under section 2.B. of the covenants. The record does not indicate whether any effort was made to determine whether the patio enclosure could be modified to bring it into "harmony" with the Association's standards or whether any patio enclosure whatsoever would constitute a prohibited fence no matter its otherwise acceptable appearance. Regardless, it was within the Association's discretion to reject Johnston's improvement. And if such rejection is deemed unreasonable by 35 of the 44 members in the Association as averred by Johnston in his affidavit, then there is an avenue for further addressing this matter available to him through the Association's meetings and procedures.

We affirm the decision of the district court to grant the Association's motion for summary judgment as to the patio enclosure and its order requiring Johnston to remove the structure from his property.

CONCLUSION

We affirm the district court's order granting the Association's motion for summary judgment and ordering Johnston to permanently remove from his property the exterior fencing he installed.

AFFIRMED.